## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF PENNSYLVANIA
## PITTSBURGH DIVISION

| | |
|---|---|
| PETER KAUFMANN, | Case No. |
| Plaintiff, | |
| v. | **COMPLAINT FOR DAMAGES UNDER THE FAIR DEBT COLLECTION PRACTICES ACT, THE TELEPHONE CONSUMER PROTECTION ACT, THE FLORIDA CONSUMER COLLECTION PRACTICES ACT AND OTHER EQUITABLE RELIEF** |
| MEDICAL DATA SYSTEMS, INC., | |
| Defendant. | |
| | **JURY TRIAL DEMANDED** |

### PARTIES

1.  Plaintiff, Peter Kaufmann ("Peter"), is a natural person who resided in Fair Oaks, Pennsylvania, at all times relevant to this action.

2.  Defendant, Medical Data Systems, Inc. ("MDS"), is a Florida corporation that maintained its principal place of business in Vero Beach, Florida, at all times relevant to this action.

### JURISDICTION AND VENUE

3.  Pursuant to 28 U.S.C. §1331, this Court has federal question jurisdiction over this matter as it arises under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq. and the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

4.  Pursuant to 28 U.S.C. §1367(a), this Court has supplemental jurisdiction over Plaintiff's claims under the Florida Consumer Collection Practices Act, Fla. Stat. ("FCCPA"), § 559.55, et seq., because those claims share a common nucleus of operative facts with Plaintiff's claims under the FDCPA. S*ee LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185

(11th Cir. 2010) ("[FCCPA's] remedies are 'cumulative to other sanctions and enforcement provisions' for any violation by an out-of-state consumer debt collector.").

5.      Pursuant to 28 U.S.C. § 1391(b), venue is proper because a substantial part of the events giving rise to this claim occurred in this judicial district.

## STATEMENT OF FACTS

6.      Before MDS began contacting Peter, it and Peter had no prior business relationship and Peter had never provided express consent to MDS to be contacted on his cellular telephone.

7.      MDS regularly uses instrumentalities of interstate commerce and the mails to collect consumer debts owed or due or asserted to be owed or due another.

8.      The principal source of MDS's revenue is debt collection.

9.      MDS is a "debt collector" as defined by 15 U.S.C. § 1692a(6).

10.     As described, *infra*, MDS contacted Peter to collect a debt that was incurred primarily for personal, family, or household purposes.

11.     This alleged obligation is a "debt" as defined by 15 U.S.C. § 1692a(5).

12.     Peter is a "consumer" as defined by 15 U.S.C. § 1692a(3).

13.     Within the past twelve months, and before, MDS began calling Peter on his cellular phone ending in -0587 using an Automatic Telephone Dialing System ("ATDS") in connection with the collection of a debt.

14.     When Peter would answer the calls, there would be a pre-recorded message before being able to speak with a live representative.

15.     During one conversation, around September 2016, Peter disputed the debt to MDS and communicated his desire that MDS cease calling him.

-2-

16. Despite this communication, MDS continued to call Peter on his cellular phone in connection with the collection of a debt.

17. Subsequently, Peter faxed a dispute letter to MDS; however, MDS alleged the letter was not received.

18. Subsequently, around October 2016, Peter spoke with a MDS supervisor.

19. During this conversation, Peter again communicated his desire that MDS cease calling him.

20. Nevertheless, MDS continued to call Peter on his cellular phone.

21. MDS's collection efforts, including but not limited to its telephone calls, caused Peter emotional distress in the form of frustration, annoyance, aggravation, and anxiety.

22. MDS's collection efforts also intruded upon Peter's privacy.

23. In addition, each time MDS placed a telephone call to Peter, MDS occupied Peter's telephone number such that Peter was unable to receive other phone calls at that telephone number while MDS was calling him.

24. MDS's telephone calls also forced Peter to lose time by having to tend to MDS's unwanted calls.

## COUNT ONE

### Violation of the Fair Debt Collection Practices Act

25. Peter re-alleges and incorporates by reference Paragraphs 6 through 24 above as if fully set forth herein.

26. In order to establish a violation of Section 1692d of the FDCPA, a consumer need not prove intentional conduct by the debt collector.  *See Ellis v. Solomon & Solomon, P.C.*, 591 F.3d 130, 135 (2nd Cir. 2010); *Horkey v. J.V.D.B. & Assocs., Inc.*, 333 F.3d 769, 774

(7th Cir. 2013) ("[Plaintiff] points to no evidence in the record regarding [Defendant's] intent, which is just as well, because intent is irrelevant" in a § 1692d claim).

27. "Instead, applying an objective standard, as measured by the 'least sophisticated consumer,' the consumer need only show that the likely effect of the debt collector's communication or conduct could be construed as harassment, oppression or abuse." *See Lee v. Credit Mgmt., LP*, 846 F. Supp. 2d 716, 721 (S.D. Tex. 2012).

28. The likely effect of MDS's debt collection efforts, as measured by the "least sophisticated consumer" standard, was "to harass, oppress, or abuse" Peter.

29. MDS violated 15 U.S.C. § 1692d by engaging in conduct the natural consequence of which is to harass, oppress, or abuse Peter in connection with the collection of the debt.

## COUNT TWO

### Violation of the Fair Debt Collection Practices Act

30. Peter re-alleges and incorporates by reference Paragraphs 6 through 24 above as if fully set forth herein.

31. MDS violated 15 U.S.C. § 1692e by using false, deceptive, or misleading representations or means in connection with the collection of the debt.

## COUNT THREE

### Violation of the Fair Debt Collection Practices Act

32. Peter re-alleges and incorporates by reference Paragraphs 6 through 24 above as if fully set forth herein.

33. MDS violated 15 U.S.C. § 1692f by using unfair or unconscionable means to collect the debt.

## COUNT FOUR

**Violation of the Telephone Consumer Protection Act**

34.   Peter re-alleges and incorporates by reference Paragraphs 6 through 24 above as if fully set

   forth herein.

35.   Senator Fritz Hollings, the original sponsor of the TCPA, stated:

> Computerized calls are the scourge of modern civilization. They wake us up in the
> morning; they interrupt our dinner at night; they force the sick and elderly out of bed;
> they hound us until we want to rip the telephone right out of the wall.

   137 Cong. Rec. 30,821 (1991).

36.   The TCPA defines an automatic telephone dialing system ("ATDS") as "equipment which

   has the capacity…(A) to store or produce telephone numbers to be called, using a random

   or sequential number generator; and (B) to dial such numbers."  47 U.S.C. § 227(a)(1).

37.   "[A] predictive dialer is equipment that dials numbers and, when certain computer software

   is attached, also assists telemarketers in predicting when a sales agent will be available to

   take calls.  The hardware, when paired with certain software, has the capacity to store or

   produce numbers and dial those numbers at random, in sequential order, or from a database

   of numbers."  *In the Matter of Rules and Regulations Implementing the Telephone*

   *Consumer Protection Act of 1991*, 30 FCC Rcd. 7961, 7973, ¶ 13 (2015); *see also In the*

   *Matter of Rules & Regulations Implementing the Telephone Consumer Protection Act of*

   *1991*, 18 F.C.C. Rcd. 14014, 14091-4093 (2003); *In the Matter of Rules & Regulations*

   *Implementing the Telephone Consumer Protection Act of 1991*, 23 F.C.C. Rcd. 559, 562-

   63 (2008).

38.   A telephone dialing system with predictive dialer functionality is an ATDS within the

   meaning of the TCPA.  *In the Matter of Rules and Regulations Implementing the*

*Telephone Consumer Protection Act of 1991*, 30 FCC Rcd. 7961, 7973, ¶ 13 (2015); *see also In the Matter of Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C. Rcd. 14014, 14091-4093 (2003); *In the Matter of Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 F.C.C. Rcd. 559, 562-63 (2008).

39.   MDS used a telephone dialing system with predictive dialer functionality to place calls to Peter on his cellular telephone.

40.   The TCPA provides, in part:

(b)    RESTRICTIONS ON THE USE OF AUTOMATED TELEPHONE EQUIPMENT.—

(1) PROHIBITIONS.—It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—

(A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice—

\* \* \*

(iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call…

47 U.S.C. §§ 227(b)(1)(A)(iii).

41.   The term "called party," as used in Section 227(b)(1)(A) of the TCPA, refers to the subscriber or the regular user of the called number at the time the telephone call is made. *See In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 FCC Rcd. 7961,7999-8000, ¶ 72-73 (2015).

42.  Peter was the "called party" in each telephone call MDS placed to Peter's cellular telephone.

43.  The "called party" may revoke any prior consent to be called on his or her cellular phone in any reasonable manner. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 FCC Rcd. 7961,7993, ¶ 55 (2015); *Brown v. Credit Mgmt., LP*, 131 F. Supp. 3d 1332, 1345 (N.D. Ga. 2015) ("The unwillingness [to receive calls] 'may be manifested to the actor by any words or conduct inconsistent with the continued consent.'").

44.  MDS violated 47 U.S.C. § 227(b)(1)(A) on multiple and separate occasions by each time using an ATDS and/or an artificial or prerecorded voice to call Peter on his cellular telephone without Peter's prior express consent or after such consent had been revoked.

45.  In addition, The TCPA provides, in part:

> If the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph.

47 U.S.C. § 227(b)(3).

46.  The Communications Act of 1943, of which the TCPA is a part, defines "willful" as "the conscious or deliberate commission or omission of such act, irrespective of any intent to violate any provision[], rule or regulation...." 47 U.S.C. § 312(f).

47.  In order to establish a "willful" or "knowing" violation of the TCPA, a plaintiff need not demonstrate that the defendant intended to violate the statute, or that it knew or should have known it was violating the statute. *See Roylance v. ALG Real Est. Servs., Inc.* 2015 WL 1522244, *9 (N.D. Cal. Mar. 16, 2015); *Bridgeview Health Care Ctr. Ltd. v. Clark*,

2013 WL 1154206, *7 (N.D. Ill. Mar. 19, 2013); *Stewart v. Regent Asset Mgmt. Solutions, Inc.*, 2011 WL 1766018, *7 (N.D. Ga. May 4, 2011).

48.   Instead, a plaintiff need only show that the defendant engaged in a "voluntary act" that violated the TCPA.  *See Bridgeview*, 2013 WL 1154206, at *7; see also *Roylance*, 2015 WL 1522244, at *9 (intentionally making phone calls that violated TCPA, without intent to violate the statute, was sufficient to warrant treble damages).

49.   MDS voluntarily placed telephone calls to Peter's cellular telephone number using an ATDS and/or an artificial or prerecorded voice.

50.   MDS's violations of 47 U.S.C. § 227(b)(1)(A) were willfully and knowingly made.

## COUNT FIVE

### Violations of the Florida Consumer Collection Practices Act

51.   Peter re-alleges and incorporates by reference Paragraphs 6 through 24 above as if fully set forth herein.

52.   At all times relevant to this action, MDS is subject to and must abide by Florida law, including the FCCPA, Fla. Stat. § 559.72.

53.   MDS is a "debt collector" as that term is defined in the FCCPA, Fla. Stat. § 559.55(7).

54.   Peter is a "consumer" as defined by the FCCPA and is a person whom the act was intended to protect, FCCPA, Fla. Stat. § 559.55(2).

55.   MDS attempted to collect a "debt" within the meaning of FCCPA, Fla. Stat. § 559.55(1).

56.   MDS willingly and knowingly violated Fla. Stat. § 559.72(7) by communicating with Plaintiff with such frequency as can reasonably be expected to harass Plaintiff, or engaging in other conduct which can reasonably be expected to abuse or harass Plaintiff.

**JURY DEMAND**

57.    Peter demands a trial by jury.

**PRAYER FOR RELIEF**

58.    Peter prays for the following relief:

    a.   Judgment against MDS for actual damages, statutory damages, and costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k.

    b.   An order enjoining MDS from placing further telephone calls to Peter's cellular telephone number pursuant to 47 U.S.C. § 227(b)(3).

    c.   Judgment against MDS for statutory damages pursuant to 47 U.S.C. § 227(b)(3) for each and every call MDS made in violation of the TCPA.

    d.   Judgment against MDS for actual damages, statutory damages, costs and reasonable attorney's fees, plus punitive damages pursuant to Fla. Stat. § 559.77.

    e.   For such other legal and/or equitable relief as the Court deems appropriate.


RESPECTFULLY SUBMITTED,


Date: October 30, 2017

By:      /s/ Jeffrey S. Hyslip
Jeffrey S. Hyslip, Esq.
HYSLIP & TAYLOR, LLC LPA
1100 W. Cermak Rd., Suite B410
Chicago, IL  60608
Phone: 312-380-6110
Fax: 312-361-3509
Email: jeffrey@lifetimedebtsolutions.com
OH 0079315

*Attorney for Plaintiff*